COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


KELVIN LYNN WHITEHEAD
                                           OPINION BY
v.    Record No. 2151-98-3        JUDGE JAMES W. BENTON, JR.
                                        JANUARY 11, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                       James F. Ingram, Judge

            S. Jane Chittom (Elwood Earl Sanders, Jr.;
            Public Defender Commission, on briefs), for
            appellant.

            Steven A. Witmer, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     A jury convicted Kelvin Lynn Whitehead of aggravated

malicious wounding.  On appeal, he contends the trial judge erred

by (1) allowing the prosecutor to cross-examine a defense witness

on issues which were beyond the scope of direct examination and

(2) admitting testimony from a Commonwealth's witness concerning

out-of-court statements made by the same defense witness.  For

the reasons that follow, we affirm Whitehead's conviction.

                              I.

     A grand jury indicted Whitehead for aggravated malicious

wounding of Ronnie Russell Cobbs occurring on September 7, 1997.

At trial in the Commonwealth's case-in-chief, Cobbs testified

that on the night of August 28, 1997, he was asleep on a sofa in

Karen Noble's house when Whitehead burst through the front door

and came toward him armed with a metal stake.  Cobbs subdued Whitehead, whom he had known twenty years, by striking him on the head with a hammer.  Explaining the presence of the hammer, Cobbs testified that he had earlier used it to seal Noble's windows "because [Whitehead] had been coming in and out."  During the struggle, Whitehead dropped the stake, retreated to Joe Duncan's house nearby, and called the police.  The evidence is silent regarding any further events occurring that evening after the police arrived.

Cobbs further testified that he was again inside Noble's house on the night of September 7, when he heard Duncan calling his name.  Cobbs opened the door, saw Duncan and Whitehead standing by the door, and told Noble that the two men were outside her door.  Noble came to the door.  As Cobbs and Whitehead argued, Whitehead threw liquid from a container in Cobbs' face, blinding Cobbs' left eye and scarring his neck and body.  The evidence proved the liquid was chemically consistent with sulfuric acid.

Cobbs ran to the kitchen sink and rinsed his body.  When he could not get relief from the pain or assistance from Noble, who panicked after the attack, Cobbs ran to a neighbor's residence to ask for help.  As Cobbs was crossing the street, he saw Whitehead approaching him and preparing to throw more liquid on him.  Cobbs testified that he screamed and that Noble yelled, "Whitehead, you are going to pay for this."  Cobbs testified that the police were arriving as Whitehead and Duncan ran to Duncan's home.

Several witnesses testified in Whitehead's defense.  Westley Hayes, who lived two houses away from Noble, testified that on

the night of September 7 Whitehead and Duncan were at his house. Hayes testified that he and Whitehead walked to a store together that evening and returned to Hayes' house. Hayes further testified that Whitehead had been sitting continuously on Hayes' porch and in his presence for forty-five minutes when they saw the police arrive at Noble's house.

Duncan testified that he went to Noble's house during the daylight on September 7. He denied that he was at Noble's house the night Cobbs was injured. Duncan testified that he, Whitehead, and Hayes walked to the store that night and returned to Hayes' house after the police arrived to assist Cobbs. Duncan said he was intoxicated and running to get inside his house when the police arrested him.

As Whitehead's witness, Noble testified that she and Whitehead are the lessees of the house where she resides. She testified that Whitehead is her "boyfriend" and that her relationship with him was now "excellent." In August, however, she "put him out" after they had an argument. She testified that on August 28, while Cobbs was awake in the house, Whitehead opened the door with his key and entered the house. When he entered, Cobbs hit him on the head with a hammer. She said Whitehead did not break into the house and did not have a stake in his hand.

Although Noble did not testify on direct examination about the September 7 incident, the prosecutor asked on cross-examination if she was home during the September 7 incident. Over Whitehead's objection, the trial judge allowed the prosecutor to continue his examination of Noble. In response

to the prosecutor's questioning, Noble said she was home when Cobbs was splashed with acid.  She could not recall, however, telling a police officer that she saw Whitehead throw the liquid and testified that she "didn't see it."  She also testified that the day after the incident she gave a signed statement to a detective but disavowed disclosing details of the incident.  She said she only told the detective details of another incident that occurred when Duncan came to her house during daylight.

Whitehead testified that he used a key to enter the house on August 28.  He denied that he was armed with a stake and denied that he attacked Cobbs.  He said Cobbs attacked him with a hammer and without provocation.  Whitehead also denied throwing liquid on Cobbs on September 7.  He testified that he went to the store with Hayes and Duncan that night and that he sat on Hayes' porch a long time after returning from the store.  While sitting on the porch with Hayes, they saw the police arrive at Noble's house. He denied having heard Cobbs' screams.

As the Commonwealth's rebuttal witness, a detective testified that Noble gave a written, signed statement on September 8.  Over Whitehead's objection, the detective read the statement.  It related that Whitehead and Duncan knocked at her door the night of September 7 and that Cobbs then went outside. Although she "didn't see anybody throw anything," she "heard [Cobbs] holler and saw him holding his face and [heard him say] call the ambulance."  She stated that Whitehead ran when the police arrived.  Also in rebuttal, another police officer testified that when he arrived to assist Cobbs on September 7, Noble said she saw Whitehead throw the liquid on Cobbs.

The jury convicted Whitehead of aggravated malicious wounding. The trial judge sentenced him to thirty years in prison, as recommended by the jury. This appeal followed.

II.

Whitehead contends the trial judge erred in allowing the prosecutor to examine Noble about the September 7 attack on Cobbs because it was beyond the scope of her direct testimony. At trial, Whitehead's counsel "object[ed] to this line of questioning unless [the prosecutor] is going to make her his own witness because . . . [the] sole purpose of the testimony was to deal with . . . Cobbs' version of this hammer incident." When the prosecutor responded that Noble's testimony demonstrated that "she . . . is not friendly to me as a witness," the trial judge ruled that Noble was an adverse witness and permitted the prosecutor to examine her further.

In pertinent part, Code § 8.01-401(A), which applies in both civil and criminal cases, see McCue v. Commonwealth, 103 Va. 870, 996, 49 S.E. 623, 627-28 (1905), provides that "[a] party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination." In construing the predecessor statute, which contained this identical language, the Supreme Court ruled as follows:

> It is clear that the intent of the legislature was, first, to compel a litigant, if called by another party to the cause, to testify in behalf of such other party; and, second, to permit any litigant to call and cross-examine any person "having an adverse interest" in the outcome of the litigation, whether or not a party. The

> only conclusion to be drawn from the language of the act and the context of the words, "having an adverse interest," is that the legislature intended to include, first, a party to the litigation, and, second, a person, though not a party, who had a financial or other personal interest in the outcome. The legislature did not mean to include a party merely because his testimony was or would be adverse to the party calling him. "Adverse interest" was used in its common and accepted meaning and was not used synonymously with "adverse testimony."

Butler v. Parrocha, 186 Va. 426, 431-32, 43 S.E.2d 1, 4 (1947). Relying on well-established practice, the Supreme Court has also ruled that "'[this same statute] has expressly been held to apply where the witness has no adverse interest, but is shown to be adverse or hostile to the party introducing him.'" Nelson v. Commonwealth, 153 Va. 909, 919, 150 S.E. 407, 410 (1929) (citation omitted). See also Virginia Elec. and Power Co. v. Hall, 184 Va. 102, 106, 34 S.E.2d 382, 383 (1945) (ruling that a witness proves adverse when the testimony of the witness is "injurious or damaging to the case of the party").

Noble's direct testimony proved she had an adverse interest to that of the Commonwealth. She described her relationship with Whitehead as "excellent," testified that he was her "boyfriend," and disclosed that she and Whitehead had a joint financial obligation as lessee of the house. On cross-examination, she testified that she regularly had visited him in jail. In addition, Noble's relationship with Whitehead was such that one of Whitehead's witnesses referred to her as Whitehead's "wife." Indeed, Whitehead concedes on brief that "Noble was a witness with an 'adverse interest' under "Code [§] 8.01-401." Thus, we

hold that the trial judge did not err in ruling that Noble was an "adverse witness."

In stating his objection at trial, Whitehead proposed to the trial judge that the prosecutor's "line of questioning" might continue if the prosecutor "is going to make [Noble] his own witness." Because the prosecutor was then cross-examining Noble, who was Whitehead's witness, we conclude that the trial judge, by ruling that Noble was an adverse witness, in effect allowed the prosecutor to proceed as if Noble was the Commonwealth's witness, a course of conduct suggested by Whitehead when he made his objection. See Miller v. Miller's Adm'r., 92 Va. 510, 515-16, 23 S.E. 891, 893 (1896) (ruling that a party who cross-examines a witness beyond the scope of the witness' direct testimony in effect makes the witness that party's witness).

The Commonwealth clearly could have called Noble as a rebuttal witness in an attempt to counter the testimony of Whitehead and his witnesses, Duncan and Hayes, that Whitehead was not the assailant on September 7. As the Commonwealth's witness, Cobbs had earlier testified that Noble was at the door when the attack occurred. Cobbs also testified that Noble yelled at Whitehead as he again approached Cobbs in the street. Moreover, the prosecutor was aware that Noble had made statements to the police that she had seen Whitehead attack Cobbs.

By allowing the prosecutor to continue the examination of Noble while she was then testifying, the trial judge merely re-ordered the manner of the examination. See Martin v. Thierjung, 238 Va. 434, 439-40, 384 S.E.2d 86, 89 (1989) (ruling that the trial judge has the discretion to allow impeachment of

an adverse witness on cross-examination or rebuttal). The rule is well established in Virginia that "great latitude [will be given] to the discretion of the trial [judge] as to the order in which witnesses may be called and the manner of their examination." Butler, 186 Va. at 433, 43 S.E.2d at 5. Absent a showing of abuse of that discretion or substantial harm to Whitehead, we will not disturb the judge's ruling. See id.

In response to the Commonwealth's leading questions, see Code § 8.01-401(A), Noble denied telling the police officer that she saw Whitehead throw the liquid, denied seeing Whitehead throw the liquid, and denied signing a statement that Whitehead was present when the liquid was thrown on Cobbs. After the prosecutor read to Noble several excerpts from her statement, Whitehead objected by asking "what is he impeaching . . . she has no testimony. . . ."

The trial judge did not err in overruling that objection because Noble had already testified that she had not seen the attack. When Noble denied seeing the attack, the Commonwealth was entitled to impeach her by her prior inconsistent statement. See Maxey v. Commonwealth, 26 Va. App. 514, 519, 495 S.E.2d 536, 539 (1998) (noting that "our common law clearly holds, albeit with little discussion, that a party may impeach a witness having an adverse interest with the witness' prior inconsistent statements"). Furthermore, in proving the prior inconsistent statement, the Commonwealth could prove the details of the statement. See Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594 (1987); McCue, 103 Va. at 996-99, 49 S.E. at 628. Accordingly, we hold that this record contains no evidence to

establish substantial harm to Whitehead or an abuse of discretion by the trial judge.

                                    III.

We also find no merit to Whitehead's contention that the trial judge erred in admitting testimony by the police of Noble's statements.  Over Whitehead's objection, the police officer and the detective testified that Noble gave statements that Whitehead was present when the acid was thrown on Cobbs and that Whitehead threw the liquid.  Once Noble testified and denied that Whitehead was present and threw the liquid and further denied that she made the statements to the officer and the detective, the Commonwealth could impeach her credibility by proving her prior inconsistent statements.  See Maxey, 26 Va. App. at 521, 495 S.E.2d at 540. "So much of the statement as was inconsistent with her testimony was clearly admissible for the purpose stated."  Epps v. Commonwealth, 190 Va. 93, 101-02, 56 S.E.2d 237, 241 (1949).  See also Hall, 233 Va. at 374, 355 S.E.2d at 594.  Furthermore, the record discloses that the trial judge instructed the jury that it could consider the inconsistent statement only for the purpose of impeaching the credibility of Noble's testimony.  See id. at 375, 355 S.E.2d at 595.  See also Hardy v. Commonwealth, 110 Va. 910, 927, 67 S.E. 522, 529 (1910).

The record discloses no abuse of discretion by the trial judge or substantial harm to Whitehead resulting from the manner in which the trial judge allowed the testimony to develop. Accordingly, we affirm the conviction.

                                              Affirmed.