COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges McCullough and Chafin
Argued by teleconference


BRUCE GREGORY REED

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 2147-13-3           JUDGE STEPHEN R. McCULLOUGH
                                                         APRIL 7, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
James W. Updike, Jr., Judge Designate

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Bruce Gregory Reed was convicted of grand larceny.  He assigns the following error:

The Trial Court erred by allowing Ms. Jones [the owner of the
property] to testify for a second time and impeach herself by
contradiction by using an opinion that was without a proper
foundation, and was an impermissible estimate, and without which
no value exceeding two hundred dollars could be established.

The standard of review compels us to affirm.

BACKGROUND

Joan Jones owns a house in the City of Lynchburg.  She has lived there since 1958.

Numerous trees had been knocked down after a "derecho" storm struck the City of Lynchburg.

Reed, who owns Reed's Tree Service, approached Jones and asked if she had any trees she

wanted cut down.  She responded that she was thinking about it for the fall.  She identified two

poplar trees between her house and a detached garage.  Jones told Reed that, because the trees

_____

    [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

were so close together, she was considering taking one down to make the other one "fuller." Both trees were about seventy feet tall and were in excellent condition. They were on the property when she moved into the house. When Reed offered to remove the trees without charging her, she responded that she was waiting until fall to decide if she wanted them removed. They did not reach an agreement, but Jones told Reed to call her before returning. Reed never called her back.

After an overnight stay, Jones returned home to find that the two poplar trees had been removed. Only the stumps remained. Although there was some wood debris behind the house, the timber had been hauled away. Later, she saw Reed working in a yard nearby. When she confronted him saying, "[Y]ou cut down my trees," he responded that he had cut down a dead tree, a hemlock, and had to cut down the two poplar trees to remove his equipment. Reed and Jones had not discussed the removal of the hemlock tree. Jones was not concerned about the hemlock, because it was "in the woods down below the property."

Reed was charged with grand larceny of the trees. At his bench trial, Jones recounted the events and, when asked on direct examination if she had an opinion on the value of the trees, she responded that she did not. The Commonwealth then called an arborist to testify. After the court excluded the arborist's testimony concerning the value of the poplar trees, the Commonwealth recalled Jones. She testified that she would not have accepted $200 for the two trees. She also stated that the trees, together, were worth about $10,000. This was "just [her] estimate," she said, based on her understanding "that it's a virgin forest," that "[t]hese were original trees" that had "probably been there two hundred years." She also stated that "poplar is very valuable wood." When asked if she based her estimate on fair market value, she responded, "I'm not qualified. That's why I hired the arborist."

At the close of the Commonwealth's evidence, the defense moved to strike, arguing, among other things, that the evidence did not establish a fair market value for the trees. The court denied the motion.

Reed took the stand in his defense. Reed explained that, following the storm in the area, he received calls for a number of tree removal jobs. According to Reed, when he approached Jones to inquire about her property line, she showed him her plat and asked him to take down the two poplar trees in question. Reed said that Jones expressed a concern that the trees, which leaned toward the house, might fall. He testified that Jones previously had work done on these two poplars and that the trees had suffered wind damage from the derecho. According to Reed, the removal job was worth $2000. Instead of being paid the $2000, however, he agreed to remove two other, healthy poplars nearby because that would "offset it." As it turned out, however, these other "offset" trees were on a neighbor's property, and Reed never cut them down. Reed never tried to collect any money. He stated, "After she was upset about it I let it go."

Reed, who was previously convicted of a felony, said he buys and sells wood "all the time." In his view, poplar trees provide "pallet grade lumber." Good quality pallet grade lumber, he explained, is worth $235 for a thousand feet. Reed opined that the poplar trees he cut down were not of good quality and were only suited for firewood. He stated that the trees had been topped. He explained that a weak economy resulted in a similarly weak lumber market, which had not been "really good" for five years. He also testified that the two poplars would have yielded about one sixth of a load and that a sawmill generally will not purchase wood in amount less than one load. Moreover, Reed said that he would have incurred additional gas and driver's expenses to transport the wood to a sawmill, amounting to "about, three, three-fifty a load."

Reed renewed his motion again, moved to strike the evidence, arguing, among other things, that the Commonwealth failed to establish the value of the trees. The trial court denied the motion. The Commonwealth recalled Jones in rebuttal. Contradicting Reed's testimony, she denied having had any past work done on the trees and specifically denied having them pruned or topped.

Appellant presented closing argument but did not renew his motion to strike at the close of all the evidence. He argued that Jones's estimate of the trees' value was without foundation. The trial court found that, although the Commonwealth had not established specific value for the trees, the evidence proved beyond a reasonable doubt that it exceeded $200. The court made clear that it based this conclusion on "the evidence in its entirety."

ANALYSIS

We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In a bench trial, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the [trial judge] who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)).

In a prosecution for grand larceny, the Commonwealth must prove beyond a reasonable doubt that the value of the stolen goods had a value of $200 or more. Code § 18.2-95.

- 4 -

Appellant first argues that the Commonwealth should not have been permitted to recall Jones to contradict her prior testimony. "The rule is well established in Virginia that 'great latitude [will be given] to the discretion of the trial [judge] as to the order in which witnesses may be called and the manner of their examination.'" Whitehead v. Commonwealth, 31 Va. App. 311, 318, 522 S.E.2d 904, 907 (2000) (alterations in original) (quoting Butler v. Parrocha, 186 Va. 426, 433, 43 S.E.2d 1, 5 (1947)). Trial courts have the discretion "to permit the recall of witnesses for further examination." See, e.g., Avocet Dev. Corp. v. McLean Bank, 234 Va. 658, 669, 364 S.E.2d 757, 764 (1988). Here, we perceive no abuse of discretion in permitting the Commonwealth to recall Jones to afford her the opportunity to correct, explain, or supplement her prior testimony. Moreover, Jones's testimony was plainly offered as substantive evidence to establish the value of the stolen trees and not to impeach prior testimony.

The heart of Reed's argument is that Jones had no basis for her opinion that the trees were, together, worth approximately $10,000. Initially, Jones stated, without elaboration, that she did not have an opinion on the value of the two poplar trees that were cut. On recall, she testified to the trees' "approximate" value, whether the trees were worth more or less than $200. Jones answered that the two trees were "probably" worth $10,000 and candidly acknowledged that she was providing only an estimate. She explained that she based this estimate on age of the trees, which were probably two hundred years old, and because poplar is "very valuable wood." When asked if she based her testimony on fair market value, she stated that she was "not qualified" to make such a determination. She elaborated, "That's why I hired the arborist." Appellant asked no further questions to explore or challenge the basis of her estimate.

Under settled Virginia law,

> [i]t is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show

that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. The weight of such testimony is, of course, affected by his knowledge of the value.

Haynes v. Glenn, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956) (citation omitted).[1] Jones's testimony was admissible, and any weaknesses in that testimony would go to its weight.

By itself, and on its own terms, Jones's estimate, although admissible, was "approximate." Jones's testimony, however, was not the only evidence before the trial court on the question of value. The court specifically stated that, on the question of value, it was basing its conclusion on the entirety of the evidence. The evidence before the court was not limited to Jones's testimony, it also included the evidence supplied through Reed's account.

Jones testified she never contracted with appellant to cut down the trees, that appellant did so at his own initiative. Appellant was knowledgeable about the value of wood. He owns a tree service, and he buys and sells wood "all the time." If Reed performed the work without contracting with Jones and without compensation, then it stands to reason that appellant cut down the trees because he knew that they were valuable. He would not have gone to the trouble of cutting down two large, healthy trees – each seventy feet tall – unless it would be worth his while. Reed, himself, noted that the cost of transporting a load of trees to the sawmill, including gas and a driver, would be about $300 to $350. While Reed stated that the poplars he cut down were of poor quality, Jones refuted his testimony, repeatedly stating that they were healthy trees.

---

[1] Reed argues that, "[w]hile a lay witness can clearly testify as to the value of property which they own, such normal testimony involves items which an owner may commonly buy or sell." He offers no authority for this proposition. Therefore, while there may be an outer limit for a property owner's valuation testimony, this is not the case for us to resolve the issue. See Montgomery v. Commonwealth, 56 Va. App. 695, 705, 696 S.E.2d 261, 266 (2010) ("'[S]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" (quoting Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926-27 (2006) (en banc))).

Reed testified that he was willing to cut down and haul away the two purportedly unhealthy poplars, a job worth $2000, if he could also cut down two other poplars located nearby. Although the record does not reveal the size of the two healthier trees, this evidence supports the trial court's conclusion that the two poplars on Jones's property were worth more than $200 and it refutes Reed's testimony that wood from healthy poplar trees is of negligible value.

A trial court can "accept the parts of a witness' testimony it finds believable and reject other parts as implausible." Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc). The trial court could consider portions of Reed's testimony as plausible and reject other aspects of his testimony. Similarly, the trial court could accept those parts of Jones's testimony that it deemed credible. From the totality of the evidence, as well as inferences from that testimony, the trial court could reasonably reach the conclusion that, whatever precise value the trees may have had, their worth was $200 or more.

Citing Snyder Plaza Properties, Inc. v. Adams Outdoor Advertising, Inc., 259 Va. 635, 528 S.E.2d 452 (2000), Reed argues that expert testimony was necessary to value the trees. In that condemnation case, the Supreme Court considered whether the commissioner in chancery should have admitted a witness' testimony on the value of a leasehold interest in a portion of a parcel of condemned property. See id. at 643-44, 528 S.E.2d at 457-58. The Court had excluded the expert testimony because the parcel's owner had not identified him as an expert in responses to interrogatories. Id. at 643, 528 S.E.2d at 457. The parcel's owner argued that the witness, "as an 'owner,'" should have been permitted to give lay opinion testimony on the leasehold interest's value. Id. at 643, 528 S.E.2d at 458. The Court, specifically citing Haynes v. Glenn, acknowledged the longstanding principle that "an owner of property is competent and qualified to render a lay opinion regarding the value of that property." Id. at 644, 528 S.E.2d at 458. The

- 7 -

Court found that principle inapplicable because the witness did not own the leasehold interest. Id. The Court further acknowledged that, while a lay witness can offer an opinion on the value of property, this specific witness had no knowledge of the particular leasehold interest at issue or any of similar general character and location. Id. Snyder Plaza does not support the proposition that expert testimony is required to value leasehold interest in a condemnation case, much less to establish the value of a tree in a larceny case.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.