COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia


ANNE FILOSA CREEKMORE

v.       Record No. 1487-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE KIMBERLEY SLAYTON WHITE
DECEMBER 19, 2023


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

Juli M. Porto (Blankingship & Keith, P.C., on briefs), for
appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Anne Filosa Creekmore appeals her conviction for contributing to the delinquency of a

minor (Code § 18.2-371). Following a bench trial, the court convicted Creekmore and sentenced

her to 12 months in jail but suspended the entire term. The court imposed a fine of $500. On

appeal, Creekmore contests that her conduct in providing counseling services to a child, including a

significant delay in reporting a minor patient's abuse, was sufficient to constitute "willfully

contribut[ing] to, encourag[ing], or caus[ing] any act, omission, or condition that render[ed] a

child . . . abused or neglected." Code § 18.2-371. For the following reasons, we affirm the

decision of the trial court.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

The mother of R.P. began sexually abusing her when R.P. was in elementary school.[1] The mother would sit beside R.P. while R.P. watched television or meditated, and she would touch R.P.'s breasts and vagina, sometimes even with R.P.'s father present.

When R.P. was 15 years old, she experienced a panic attack at school. A school counselor recommended therapy and, on March 12, 2020, R.P. began seeing Anne Creekmore, a licensed psychologist, for counseling. During either her second session, on March 23, 2020, or her third session, on March 30, 2020, R.P. reported her mother's sexual abuse to Creekmore. In response, Creekmore suggested to R.P. that she defend herself by using her own hands to block her mother and by telling her mother to stop. Creekmore also recommended a book to R.P. After the appointment, R.P. returned home where her mother again abused her when she squeezed R.P.'s breast. Following the advice of Creekmore, R.P. told her mother to stop. R.P. reported the additional abuse to Creekmore at her next session.

Creekmore then recommended that R.P.'s mother and father join R.P. in a group therapy session. R.P.'s father joined in the remaining two therapy sessions. R.P. and her father agreed that asking her mother to attend a counseling session "would have really disrupted [their] home life" and possibly made the home unsafe. R.P. also stated that she did not want to be around her mother. R.P. stopped attending counseling with Creekmore following her fifth session on April 14, 2020.

---

[1] We identify the child by her initials and her parents by their relationship to her in order to afford the child privacy.

Henrico Child Protective Services' records showed that Child Protective Services (CPS) received an anonymous referral regarding the mother's sexual abuse of R.P. on May 14, 2020. The reporter indicated that the abuse "has been happening since [e]lementary [s]chool and [had] happened as recently as a week or two" prior to the referral. CPS investigator Rebeca Wachter responded to R.P.'s home the same day and removed R.P. from the home.

Creekmore was subpoenaed by CPS to be a witness at the protective order hearing on July 24, 2020. While at the courthouse, Creekmore outlined her treatment of R.P. to CPS investigator Wachter. According to Wachter, Creekmore stated that R.P. disclosed her mother's sexual abuse during her second session. Creekmore indicated that R.P.'s father participated in R.P.'s third and fourth sessions. In the fourth session with her father, R.P. discussed being sexually abused by her mother. Creekmore told Wachter that they then discussed that R.P. should be able to protect herself, but that R.P. could turn to her father if she needed to. But R.P.'s father said to Creekmore that he did not want to be involved. Creekmore also said that at R.P.'s fifth session, she gave R.P. the book "Courage to Heal." Creekmore described to Wachter that R.P. was angry and crying during that session. Creekmore relayed that she was contacted by R.P.'s father after that session and that he told her that R.P. had allegedly "cried in front of [him] about how bad it was." Creekmore stated that R.P.'s father then ended counseling services because he felt that R.P. "could fend for herself" and because her "mom was too problematic." When Wachter asked Creekmore for her counseling notes and records, Creekmore explained that she did not really write down notes and ended up relaying information from her memory to Wachter.

When the police contacted Creekmore by phone on April 1, 2021, she shared that R.P. first mentioned her mother's conduct, calling it sexual harassment, during the third therapy session. However, Creekmore told the detective that she did not know if she believed her.

Creekmore also told the detective that after R.P.'s disclosure at the fourth session, she tried to help R.P. understand that what her mother was doing was not sexual harassment, but abuse. Creekmore further revealed in the interview that she questioned R.P.'s father about the allegations because R.P. indicated that he was present during the incidents of abuse. Creekmore confirmed to the detective that the father told her that R.P. was "not a liar."

Also during the interview with the detective, Creekmore said she did not report the allegation that day, nor when R.P. first reported the abuse, because she "didn't know if she believed the child."[2] After the fifth session on April 14, 2020, in which R.P. had cried and the father said no more therapy was needed and ended the sessions, Creekmore said she then realized that R.P. had been telling the truth. The only record of a report made to CPS concerning the abuse of R.P. is one made a month later on May 14, 2020, by an anonymous source.[3]

ANALYSIS

"When considering whether evidence is sufficient to sustain a criminal conviction, we view the evidence in the light most favorable to the prevailing party at trial and grant to it all reasonable inferences fairly deducible from that evidence." *Spell v. Commonwealth*, 72 Va. App. 629, 634 (2020) (quoting *White v. Commonwealth*, 68 Va. App. 111, 114 (2017)). "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "However, to the extent the appellant's assignment of error requires 'statutory

---

[2] As a mandatory reporter under Code § 63.2-1509, Creekmore was required to report suspicions that a child is abused or neglected immediately to the local Department of Social Services.

[3] Creekmore claimed to be the anonymous source. Creekmore additionally claimed that she made an earlier report to CPS but could provide no specific date of the call nor any notation of the call in her records.

interpretation, it is a question of law reviewed de novo on appeal.'" *Coomer v. Commonwealth*, 67 Va. App. 537, 545 (2017) (quoting *Grimes v. Commonwealth*, 288 Va. 314, 318 (2014)). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Jones v. Commonwealth*, 68 Va. App. 304, 307 (2017) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)).

Under Code § 18.2-371, an adult who "willfully contributes to, encourages, or causes any act, omission, or condition that renders a child delinquent, in need of services, . . . or abused or neglected" is guilty of a Class 1 misdemeanor. In her motions to strike in the trial court and in her briefs and argument before this Court, Creekmore asserts that she did not violate Code § 18.2-371 because she did not engage in an overt act that contributed, encouraged, or caused the child to be abused or neglected. She also argues that the word "omission" refers to an omission by a third-party and even inserts that language into her description of the statute in her opening brief—language clearly not included in the statute.[4] In fact, she does not challenge whether her actions were willful, whether the evidence established her likely knowledge that the abuse would continue, whether the child's parents abused R.P., nor whether she was a mandated reporter or somehow responsible for the child's care and well-being. She simply poses one question that she believes controls the analysis: "[I]s failing to report abuse the same as 'contribut[ing] to, encourag[ing], or caus[ing]' the 'act, omission, or condition' that renders the abuse under Code § 18.2-371?" Creekmore's attempt to simplify the issue ignores the specific facts of this case that make her unique and specific conduct fall squarely within that which is prohibited by Code § 18.2-371.

"When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language." *Proctor v. Commonwealth*, 40 Va. App. 233, 247 (2003) (quoting

---

[4] She cites no case law supporting her variation of the code section.

*Shelor Motor Co. v. Miller*, 261 Va. 473, 479 (2001)). And "the plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow, or strained construction." *Brown v. Commonwealth*, 75 Va. App. 388, 405 (2022) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)).

Among the conduct prohibited by Code § 18.2-371 is the *causing of any omission* that renders a child abused or neglected. "Omission" is defined as a "neglect of duty." *Omission*, *Black's Law Dictionary* (11th ed. 2019); *Omission*, *Webster's Third New International Dictionary* (2002). Creekmore does not dispute that she is a mandatory reporter and thus has a statutory duty to report suspected abuse or neglect. Creekmore does not dispute that she, alone, caused that neglect of duty when she failed to report the suspected abuse and neglect immediately, as required. Creekmore's conduct was not simply the "failing to report abuse" as posed in her simplified question. Creekmore's conduct was the causing of a neglect of a statutory duty.

An analysis of the specific facts established by the record of this case supports the trial court's finding that not only did Creekmore cause an omission that rendered R.P. abused or neglected, but also that she engaged in overt acts that rendered the child abused or neglected. It is undisputed that R.P. fits the definition of an abused or neglected child. Code § 16.1-228(4) defines an abused or neglected child as one "[w]hose parent[] . . . commits or allows to be committed any act of sexual exploitation or any sexual act upon the child in violation of the law." R.P. reported to Creekmore that her abuse by her mother had been occurring for many years. She also told her counselor that her father, at times, was present during the abuse. Furthermore, even after revealing the abuse to Creekmore, R.P. was again the victim of her mother's abuse. Equally disturbing is that, notwithstanding the father's acknowledgment of the abuse, he told Creekmore that he would not involve himself in stopping it.

- 6 -

These revelations regarding the ongoing abuse and neglect of R.P. were made known to Creekmore over the course of five therapy sessions. Yet rather than complying with the mandatory reporting statute, Creekmore chose to give a 15 year old advice on how to confront her own abuser to try to stop the abuse. She determined that it was appropriate to instruct R.P. to push her own mother's hands away and to tell her to stop when confronted with the abuse. In order to assist R.P. in dealing with any trauma associated with the abuse and neglect, Creekmore referred R.P. to a book to read. Notwithstanding the time in which a mandatory reporter must make a report of suspected abuse and neglect of a child, Creekmore violated her statutory duty and made no such report until approximately 30 days following the last counseling session.[5] She did not make a report after the second or third session in March, when the abuse was first revealed. She did not make a report following the reporting of an additional instance of abuse. She did not make a report following the father's admission that he would not involve himself in stopping the abuse.

Instead, Creekmore, by her own actions, caused a 15 year old to remain in her abusive and neglectful home, where additional abuse and neglect continued.[6] Clearly, it cannot be ignored that following the report to CPS, R.P. was immediately removed from her home and at the time of the trial of this matter had not been returned to her parents.

Finally, Creekmore argues that because the mandatory reporting statute only subjected Creekmore to a fine for failing to report sexual battery, the legislature did not intend her conduct to be criminalized. She, however, ignores law established by our Supreme Court and the United

---

[5] *See* Code § 63.2-1509.

[6] Creekmore, throughout her defense argues that the abuse and neglect had already occurred yet fails to recognize that the abuse and neglect present in this case is not a single instance but a continuing condition present in the home involving the mother's additional sexual abuse and the father's additional unwillingness and failure to act.

States Supreme Court that allows for conduct to be prosecuted when it violates more than one statute. "[T]he fact that separate statutes may overlap in their proscription of specific conduct does not detract from their independent enforcement except when double jeopardy concerns are implicated." *Jones v. Commonwealth*, 296 Va. 412, 416 (2018) (quoting *McDonald v. Commonwealth*, 274 Va. 249, 259 (2007)). In the present case, the statutory elements set forth in the contributing statute are entirely different from those set forth in the mandatory reporting statute. "[W]hen an act violates more than one criminal statute, the Government may prosecute[] under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979).

Creekmore's argument also fails to recognize that her prosecution was not simply for the failure to report. Rather, Creekmore faces prosecution due to her violation of a statutory duty, her specific advice, and her conduct during treatment—all of which greatly impacted R.P., who continued to be abused and neglected.

CONCLUSION

For the reasons stated above, we hold the evidence as a whole, including the specific advice and conduct of Creekmore during the therapy sessions, as well as the neglect of her statutory duty to report suspected abuse and neglect was sufficient for the trial court to conclude that she violated Code § 18.2-371. Thus, we affirm Creekmore's conviction.

*Affirmed.*